May it please the Court, my name is Kevin McCoy. I'm with the Federal Defender's Office in Anchorage and I represent Nico Dorsey. This morning what I would like to do is focus my comments primarily on the search issue and the questions that center on the search issue or revolve around the search issue, and then discuss very briefly the Gun-Free School Zones Act and the amendment. At the outset, the layout for Bartlett High School and the signage that tells the public or informs the public of their responsibilities when they come onto the campus is set out in tab C of the excerpt, and I'd encourage the Court to take a look at that. The campus grounds are open from 6 a.m. to 11 a.m., and that's what the signage indicates. The campus includes a public swimming pool that's owned by the municipality of Anchorage, and there's facilities track. What do we do with the fact that the school, what are they called, community resource officers, school safety officers, I think that's what we call them down here, contacted Mr. Dorsey, ascertained that he had no legitimate reason for being on the campus, ordered him to leave, and then they are informed by the detective that she sees him back that same afternoon in direct violation of the command to leave, which the magistrate judge found established probable cause to arrest him for trespass under the Alaska statute, and that arrest was effected the next morning. So does it really matter what the sign said? Yes, it does matter, because we don't know that Mr. Dorsey didn't do exactly what the officers told him to do. Well, he left, but he came back. Yes, yes. And what did the officer tell him, and what does Alaska trespassing statute require? He was told not to come back unless he had permission. And we know that the next day he's arrested at 2 in the afternoon, and even if you accept what Detective Potter said, and that raises the hearsay confrontation issue that I'll get to, but even if you accept that, there's nothing in the record that indicates that the officers did anything to determine whether or not he had not done, Mr. Dorsey had not done, exactly what had been asked of him. Well, they ascertained that there was no student by the name of Lavengood enrolled at the high school. Correct. So they knew that he'd lied to them about who he was there to see. Correct. They also knew that he had returned within a couple of hours to the campus after they'd ordered him off. What more under the Alaska statute do we need to uphold the magistrate judge's ruling that they had probable cause to arrest for the trespass? Very simple. A quick inquiry of the office. Did Mr. Dorsey contact anyone indicating that he had, that he wanted to come on to the campus to pick anybody up? And again, I think there's no evidence in the record that he did that, right? No. Okay. So at this point, we have to assume that he had not done it because the record's silent on it. I don't think he can make probable cause determinations based on assumptions. And that's what happened. The officers assumed that he hadn't made any efforts to come back on the campus legitimately. The question is, on the basis of just those two key facts, that the officers had the authority to order him off, that he was warned not to come back, that he had lied to them about who he was there to see, The question, I guess, is would a reasonable person conclude that there was, that Mr. Dorsey was engaged in the crime of trespass sufficient to warrant his probable cause for his arrest? And the magistrate judge found that that was sufficient. And it's our position that the magistrate judge was mistaken because when you're assessing the probable cause calculus there, you have to look at Alaska's trespassing statute. And you have to look at attorney decisions that are discussed in the briefs. You cannot permanently ban someone from public property. This clearly was public property in our view. But a permanent ban does not permit, as I understand the Alaska or just trespass law generally, if you have, as the officers apparently do, the lawful authority to order him to leave, and then he's back within a reasonably contemporaneous time period, in this case a couple of hours, isn't the crime complete at that point? I don't understand what's missing. It's not complete because you have to prove that he did not have permission to come back. I mean, we're not talking – we're not – So is it your position that he has to be warned each time that he comes back on the school that he has to leave? He has to ignore a reasonably contemporaneous order to leave. And the reasonably contemporaneous order was given the first day. And that order was if you need to come back, you contact the school. You do just like any other citizen required. Remember, this facility, if you're going to drop off a student or to pick up a student or to use the swimming pool, you don't have to go to the office. What you have to do is if you intend to go into the high school proper, you have to go park in the parking lot that's for the faculty. There's an area designated for visitors. You walk into the office and you say, my name is Kevin McCoy, and I want to give a criminal justice speech to so-and-so's history class. Or, I mean, the cross-examination, if you take a look at the record of the superintendent of the school, she detailed what was required. And that's – so the officer was right when he says you have to have proper business to come here. You have to have proper business to come here. To come onto the school grounds at all? No, to go into the school. I mean, in other words, this is a public facility, and it has to be – it's open to the public commensurate with its public function, which is its public education function. The example that I used in front of the district court and that I would use here and comes from this Alaska's court opinions attorney is the courthouse. Those facilities, this courthouse, this courtroom is open to the public. Anyone who wishes to come in and watch this proceeding is free to do that. If this court were to seal it for any reason, you wouldn't be allowed in. You're not allowed back in chambers unless you have permission. But it's commensurate with its public function, and that's the concept that I'm trying to convey with regard to Bartlett High School. It's a community facility. It's the only 50-meter pool in the state of Alaska. The championships are there. My children have been there. I've been there. I don't go into the office, and my children who were not students there didn't go into the office to ask to use the pool. There are reasons that people go on. The officers were correct when they said that. But, Mr. McCoy, even if we accept all of that, that neither you nor your children are trespassing when you come on Bartlett High School campus to use the swimming pool, the fact that the officers had contacted Mr. Dorsey earlier that day and ascertained that he had no legitimate reason to be on the campus, there's no suggestion in the record that he was there to use the swimming pool, or in fact, he lied to the campus to the reason for being there and gave them a fictitious student's name, and so they ordered him to leave. And he left. So why doesn't that distinguish Mr. Dorsey's situation from the McCoy family coming to use the 50-meter pool? Because we don't know why Mr. Dorsey came back. We have. There is no information. I mean, what's happening in this case is you're blending reasonable suspicion for a stop with probable cause to arrest him. Well, the magistrate specifically found as a matter of, I guess it would be a mixed law fact question, that there was probable cause to arrest him based upon these facts that were discussed. Right. And that depends on whether you can accept the assumption as forming a basis for believing that he was there without permission. Counsel, let me ask you. Go ahead. Let me ask you, do you concede that the officers in this case had the authority to order the defendant off the school ground? No, I don't. I mean, I think if you look at the briefing, the officers are behaving inconsistently with the memorandum of understanding that was ñ which created the police officers in the school program. And what happened after the Dorsey incident, there was a big effort to amend it, to clarify and make sure that they had the authority. But at the time, there was nothing in the memorandum of understanding that gave them the authority to order. That troubled me. That troubled me, because I didn't see where the officers had the authority to ñ And by answering Judge Tallman's questions, I don't want to concede that I think that they did. I mean, I don't think that they did. And I think what's troubling here is that the written record, the memorandums of understanding are inconsistent with the way the officers behaved. And even if you accept the latter, the amended information, they're very cautious about giving police officers authority to make these kinds of orders, because the preference is to have a student resource ñ oh, a campus security ñ somebody from the school district to make the ñ Or an administrator. Or an administrator. And there's also something they give. They have that form that they give to ñ Like a bar letter. It's a bar letter. And it's in the record. And it basically says, you are not allowed to come back here. If you come back here, you will be prosecuted under these statutes. It's a clear warning. That's the other thing that troubled me. It was a very general ñ it was a very general trespass notice. Generally in trespass, the warning has to be very specific and put the person on specific notice. And that bothered me, too, about this case. Right. That there was not a trespass notice as you normally think about it in the law. Right. I mean, you know, there's no question that Mr. Dorsey was rude, and there's no question that he was violating the headgear policy that they had. And, you know, but he was not, you know ñ you know, he ñ I mean, it would be appropriate, in my view of the record, for the officers, had they seen him on the second day, the September 3rd, to, we want to go talk to him and see what he's doing here. But that is not what happened. They turned on their overhead lights, and they arrested him immediately, and told him he was under arrest. And what's so revealing is when they saw the state magistrate within an hour, they actually stated that that was their intention. They decided that they were going to arrest him if they saw him on the campus. I should ñ I would like to touch briefly on the hearsay and confrontation issue and the Matlock opinion. It's very clear, and the government's correct, that hearsay is admissible at a suppression hearing. But it's our view that there has to be some reliability analysis of that information before it can be accepted for the truth of the matter, asserted and relied on in a decision. And in this particular case, in the record, the magistrate judge at the evidence hearing sustained hearsay and confrontation objections, acknowledged that it would be ñ Sustained the objections? Yes. And you can find that at tab K, pages 40 to 48, and again at page 130 in tab K. That's the transcript of the evidentiary hearing. There was discussion about whether the information could be used for state-of-mind purposes, and it was agreed that it could. But he did sustain ñ So that would be not hearsay under the rule, right? Exactly. Correct. For the state of mind, not for the truth. Yeah, but he offered state of mind. That would be a probable cause to arrest. But I don't think that that establishes that you can't consider that for the truth of the matter asserted. Counsel, you can't have it both ways. If there is an exception to the hearsay rule and it's admitted for purposes of state of mind, then it has to go to what the state of mind of the officer was in formulating the probable cause analysis. Sure. And the officers thought he had been there before, based on what Potter had told them. But that's all. They had done nothing in the 24 hours to check to see whether he ñ whether he, Mr. Dorsey had done exactly what they asked for. Just because evidence is admissible for one purpose doesn't mean it's admissible for all purposes. And ñ I mean, it sounds to me like what you're essentially saying is even though there is a state of mind exception, it still has to be ñ Oh, I think it's ñ Excluded under the hearsay rule. No, no. That's not how the rule ñ I'm not trying to say that. If I am, I'm ñ Well, I think what you're saying is it's considered for the state of mind of the officer. Exactly. But it can't be considered to determine whether or not there was sufficient evidence ñ It was true. Exactly. That's the problem. That's the distinction I'm trying to make. But the question that we kind of have to decide for purposes of the arrest is simply whether the officers had probable cause. And we do things like that all the time. We say, all right, a reliable informant told him something. Even if that informant was lying, it's probable cause, so the arrest is good. But that's ñ but what we go from the fact that the detective told him that he ñ that she saw someone in a car similar to that matching his description the day before to a conclusion that he was there without permission. Now you're arguing the weight in terms of informing the officer's probable cause decision. And that's a different question. The question here, and I think Judge Camby just put his finger on it, is the officers might very well have been able to rely upon it in establishing probable cause to arrest him, but you might or might not have been able to exclude the evidence at the trial on the merits in proving the crime by proof beyond a reasonable doubt. That's the distinction. Well, I think ñ I think that the distinction is, you know, had the officer behaved differently, Mr. Dorsey, what are you doing here? Who have you talked to? At that point, you're establishing, depending on his answers, you may or may not be establishing probable cause. Here, this is just a hunch. That's all this is. Another officer claims to have seen him there before, and therefore, he's back. Therefore, he must be back without permission. Therefore, there's probable cause to arrest him for trespassing. And I think that's flawed. I don't think that ñ I mean, it's a hunch rather than fact. But that's not a Crawford argument. Beg your pardon? That's not a Crawford argument. I'm not getting a reference to Crawford. I'm sorry. It's not ñ A contamination case? Isn't Crawford ñ yeah. The ñ the ñ Here, sir. The Supreme Court case that says ñ No, it's not a Crawford argument. I mean, we're not talking about cross-examining the officer. Confrontation. Right, right. No, yeah. But, you know, and then in terms of assessing the reliability, when you look at Matlock, if the answer is hearsay is always admissible at suppression hearings, then why bother having evidentiary hearings at suppression cases? In Matlock, the witness at issue actually did testify, okay? Her statement, the one that was relied on in that case to make the suppression ruling, was a declaration against interest. And it was corroborated by other evidence. We have no information about this officer, Carter, whatsoever. And other than the fact that there's a police officer, and if you want to have a blanket exception for police officers, they're always reliable. I suppose you can do that. But I think it's wrong to just, you know, blanketly rely on hearsay in this context, because when Dorsey was told to leave, he was told there were things he could do to legitimate his return to the campus. Is there a testimony? What's the closest? I realize there wasn't a transcript being made when the officers made the statement originally, but the testimony as to what they said when they ordered him off. The testimony. The closest we can get to that. It would be, I can't give you a precise, it's in tab K, and it would be both Officer Peck and Officer Schmidt testified to it. And basically they said, you have no business being on the campus if you want to come. And he says, well, what if I want to pick somebody up or I want to see somebody? If you have that, if you have that reason, you need to call the school and make arrangements ahead of time. And that's discussed by both of the officers at several points. And I'm sorry I don't have a precise, but if you read the testimony of Schmidt, Officer Schmidt and Officer Peck, you'll find it. And I know it's cited in the briefs. Counsel, let me ask you this. If somebody is trespassed off school property, does that mean they can't drive by the, they can't drive on the campus at all? Is that your understanding of what that means? No, not when I look at the public purpose of this facility. I suppose there are situations where people can be banned permanently. The superintendent of schools talked about that. I don't know if there's a basis in law, but she talked about that. Are you drawing a distinction between the property line at the buildings versus the property line at the entrance to the parking lot? Sure. And why can't the school administration responding to concerns about drug dealing involving students, which occur both inside the school buildings and particularly in and around vehicles in the student parking lot, order a person off of the boundaries of the property of the school district in order to address that problem? And isn't that exactly what happened here? No, that's not exactly what happened here. What exactly happened here was, sir, you have no business on the campus right now. If you intend to come back, you better contact us and make those arrangements. I don't disagree with you that a school administrator could say, look, we're concerned about drugs and things of that sort. We don't want that around our school. I mean, I'm reminded of Justice Kennedy's comment. Nobody wants guns in school. Nobody wants drugs in school. I mean, we still, you know, that's not what happened here. He was told. Well, what happened here, if we look at the fact, Mr. Dorsey is the poster child for the drug-free school zone act. Okay. In fact, do you want to turn to that argument? I think we've kind of beaten you. Oh, very briefly. All I want to do is, I mean, I'm sure the Court is well-versed in it. I mean, there's just a simple point that I want to make is that there are issues that are truly national and issues that are truly local. And this is something that traditionally and typically dealt with the state police powers. And my point being is just by introducing the commerce nexus, which I recognize is the broadest reach of Congress's power, you cannot turn something like this, which is really non-economic conduct, into economic conduct. Can you distinguish our cases where we have upheld as against constitutional challenges the felon in possession cases where the jurisdictional hook is exactly the same, proof that the firearm at some point in the past has traveled in interstate commerce and it's now in the possession of the felon? It is difficult. I recognize that. But, I mean, you know, this is the 21st century. The reality is is there's nothing in our lives at all that does not have some relationship to commerce, tangential or otherwise. And I think the day is coming when, you know, at some point in the Supreme Court is telling us in Lopez and Morrison that there is a line drawing. And, you know, I don't think that Congress can unilaterally turn something into a commerce event by putting that element in. And I recognize it's a problem with the felon in possession cases. Okay. I'll save whatever time I have for rebuttal. Thank you. Well, I'll give you some time. Thank you so much. You bet. Thank you. Ms. Farrington. Good morning. May it please the Court. My name is Jillian Farrington. I'm an AUSA in the District of Alaska, and I represent the government in this case. To begin with, I'd like to set the issue clearly. Mr. Dorsey concedes that if his arrest was valid and based upon probable cause and the initial search of his truck was proper and physical evidence against him comes in, so the primary issue that you all spent most time with Mr. Dorsey's counsel this morning was whether or not his arrest was valid. At the time that the police approached Mr. Dorsey and placed him under arrest, they had at least three separate independent bases, all supported by probable cause, to support his arrest. And the principal one was the fact that Mr. Dorsey was trespassing on school property less than a day after he'd been ordered off, or I guess it was a little more than a day, actually, a day after he'd been ordered off campus by these officers themselves. They saw him personally in their presence back on campus, again driving recklessly through the student parking lot. They stopped him and arrested him for violating the previous day's order that he depart from the campus and not return without permission. So are you not relying on Detective Potter's observation as reported to the same officers that Dorsey was actually seen coming back the same day they told him to leave? I believe that that entire issue is a red herring for this Court. It is no more hearsay for those officers to have listened to what Detective Potter had to say about what Dorsey had done. Well, now you've jumped to the hearsay question. That's not responsive to my question. My question is, are you not relying on the probable cause analysis, as the magistrate judge did, in concluding, as I thought I read in his ruling, that the crime was complete when Detective Potter reported that she had seen Mr. Dorsey return to the Bartlett High School campus on the same afternoon that he was ordered off? I believe that what he did was trespass again that afternoon, and the next day, when the magistrate judge, knowing that he had appeared again the day before in violation of the orders that they had received, that only added to the probable cause that they had to arrest him at that time. He wasn't arrested that day. I'll try it one more time. So did the officers have probable cause after they spoke to Detective Potter was to arrest him at that point, without regard to what happened the next day? Yes. Yes, I believe that they did. They knew that he, at that point, they had information from a reliable source that he had returned to campus in violation of orders. They did. He wasn't arrested at that point or for that offense. He was arrested the next day when he committed the same offense yet again. And I don't know that they made any inquiry whether he had permission to come back that afternoon. They had specifically spoken with the school administration, with the assistant principal, after their first encounter with Mr. Dorsey, described to her what had happened. They researched the name that he had given them, determined that he had been lying to them, and she endorsed their conclusion that he'd be ordered off campus. And my suggestion would be that it was therefore reasonable for them to believe that if he had contacted the school office and sought and received permission that they would have been informed of that. There would have been a – this community of individuals responsible for keeping a safe and secure environment within the high school would have been in communication had there been any further contact or discussion with Mr. Dorsey. At the very least, it was entirely reasonable for the officers to proceed on the belief that they – that there had been no such permission granted. Certainly, when they approached Mr. Dorsey, and he did not claim at the time that he had been granted permission, that he had called and given a legitimate name of a student that he wanted to pick up or that he wanted to use the pool, or, as counsel cited, that he was visiting the school as a citizen to communicate with the students, that there was no reason for them to believe that anything of that sort had occurred. This is not – this is not the case. If officers had no authority to trespass Mr. Dorsey off the property, would that negate the trespass hook for the probable cause? If they had no authority, yes. Under Alaska law, he had to be directed off the property by a person in authority. And how is that defined for purposes of a school? Who has authority to trespass individuals off a school property in Alaska? Well, I believe the statute is a person in control. That's the language that they use. And the public safety officers who – who are assigned to assist with the school's safety were specifically, at the time of the – the arrest that was made here, charged with, quote, helping to maintain a self-and-orderly environment. And the school was – How is person in control defined under Alaska law? I assume it's control of the premises, right? That's a person with proper authority to help maintain the safe environment of the schools, I believe. Where are you quoting from? I'm sorry. I don't have a quote for you. That's the difficulty I have with this case. Because generally the people in control of a school premises would be the principal, the administrators, the school board. And that's why I have difficulty with this case, because I don't see anything in the MOU that designates the officers as people in control for purposes of trespassing. And I know that there is some argument that they were delegated that authority, but I don't see any clear indication of that in the record. Well, I don't believe that it has to be an express delegation. Their responsibility, as police officers, was to help maintain a safe and secure environment in the school. And that is what we have. But that does not give one authority as the – as the owner or manager of the property. I mean, the police officers generally have the charge to secure a community. But if it were on a private – if it were a private residence, they couldn't tell somebody to stay away from there and have a valid trespass point. It's the owner or manager of the property. So relating that to this scenario, I have some difficulty. No, but the officers do have an official responsibility with respect to the schools that I believe does place them as persons in control of issues regarding the safety and security of the school environment. And that is what the MOU specified. In fact, after this, the policy was clarified, and I think it was in part in response to this particular situation. It's your position that police officers who are on the school premises have authority to trespass any citizen that the officers think posed a security problem. They have the authority to trespass them off school property. That's your argument? Yes. I believe that they do. That when they confront individuals without any proper reason for being on campus, that they have the authority to direct them to leave. To direct them to leave and not come back. And not come back without receiving the proper permission and authority. Now, what case in Alaska supports your interpretation of Alaska trespass law? I don't have a citation for Your Honor. I'm sorry. Counsel, you started by saying there were at least three reasons they could add probable cause, I think. That's right. And the police officer who actually arrested Mr. Dorsey in the course of his testimony actually cited the fact that Mr. Dorsey was driving recklessly in front of them. Does that permit an arrest or is it just a citation or something? Is that just the authority for a stop? The police officers have authority to arrest for reckless driving under Alaska State law. So they can make a full physical custody arrest as opposed to citing and releasing. Yes, they can. Now, they don't necessarily do so. They don't have the discretion to do either. They do have the discretion to do so. But he wasn't arrested for reckless driving. The police officers testified and the magistrate judge decided that at the time he was arrested, he was arrested for reckless driving and for trespassing. Okay. So where is that in the record, that he was arrested for reckless driving? The testimony of the officer said he was arrested for reckless driving. Where is that in the record? Okay. It's cited in the report and recommendation of the magistrate judge. I understand. But where in the record does that appear? Those were the factual findings of the magistrate judge based on the officer's testimony. Where did the officers testify to that? What undergirds that finding? Is that, I mean, what makes that finding not clearly erroneous, I guess? ER tab K, Your Honor, at page 1 through 56. No, that's not. 1 through 56. I'm sorry. 1-56. The ER is tabbed up. Okay. 1-56. So is that volume 1, page 56? I believe that's the. You're not referring to pages 1 through 56. And it's. It's 1-56. 1-56. Officer Schmidt there testified that he arrested Mr. Dorsey for trespassing, reckless driving, and he had the odor of marijuana coming from inside the vehicle. And the probable cause that Officer Schmidt observed at the time was that Mr. Dorsey was speeding through the student parking lot at the very time that all the students were attempting to leave, walking back and forth. He was cutting in and out of the traffic line. He was passing on the right. And at the time that they stopped him, he had actually pulled out into the oncoming lane of traffic to zip around everyone else who was waiting to exit the school. How is reckless driving defined under Alaska law? I quote it in my brief, Your Honor. I don't have it at my fingertips. I'm sorry. It's Alaska statute 28.35.040. What is it, Alaska statute? What now? Section 28.35.040. Now, are you saying that the officers personally observed these, the speeding and the cutting in and out? Well, certainly so, yes. And they describe it at some length in their testimony, observing his driving through the school parking lot. To move on to the jurisdiction and confrontation clause issued, that Mr. Dorsey was discussed earlier. As I said, this was not hearsay. These were facts that the officers had in their possession on which they based their conclusion that Mr. Dorsey should be arrested. It was simply information known to them, adding to the probable cause for their conclusion. As is described, it was state of mind. Even if it was hearsay, hearsay is not excluded from suppression hearings. The fact that information can be hearsay can go to the due process analysis as to whether or not the district court violated or abused its discretion in admitting the evidence and whether or not there was sufficient support for the probable cause. But it's not per se excluded. Counsel, let me ask you this. Did the school district have a policy regarding trespass and how it was supposed to be administered, who was supposed to give the warning, the content of the warning? Did they have a policy? At the time, there was not. The extensive discussion of the school policy in the record here was all adopted after this case occurred, in part due to the fact that this case raised some legal issues as to whether or not the school officers had the authority to direct people to leave campus, and the school quite appropriately decided to clarify its policy in that respect. So the written notification, that's an ER tab C, was adopted after the fact? That's my understanding. Okay. The second issue in this case is whether or not Lopez applies to Render 922Q unconstitutional. I believe that this is, has been laid to rest. The only court of appeals to consider this issue directly as it applies to 922Q is U.S. v. Banks, which had no trouble finding that when Congress explicitly includes a requirement that there be proof that the firearm in question moved in commerce, that it has clearly acted within its authority under the Commerce Clause. And this Court, in any number of analogous situations, has held the same thing. The problem in Lopez was that there was no jurisdictional hook. There was no requirement in the original statute that there be any jurisdictional finding whatsoever, and the Supreme Court said that that was not enough, that Congress had exceeded its authority in that situation. Congress responded, including a jurisdictional requirement and including its own extensive findings of fact as to the effect on commerce, and I believe that the statute is now plainly constitutional. Just let me ask you this about the reckless driving. You said that the officers arrested him for reckless driving, but in their reports, they didn't put a reckless driving as a basis for the arrest, did they? No, they did not. So because they – How do you account for that? Well, they consulted with the prosecuting authority, and she instructed them to charge him for the drugs, the gun, and the trespassing, which they did. They did not include reckless driving in their reports. It wasn't necessary, and I believe that the Supreme Court has now made it clear that it's pretty much irrelevant whether it's cited in reports or whether he's charged with that or whether he's told that that's what he's being arrested for. Davenport makes it clear that as long as they had in their possession facts supporting probable cause to conclude that he had committed an offense, that it doesn't make any difference. So it might be useful for impeachment, but that's about as much as you're going to get out of it. That's exactly right. It's an objective test as to whether or not the facts in their possession at the time were sufficient to support a conclusion. If I read the magistrate judge correctly, he said that the reckless driving gave permission to stop. And then I think he says that as part of the stop, of course, you can order him out of the car and search the immediate area, maybe for weapons. I don't know if he can search the whole car. He said he smelled marijuana when he got out of the car. That's correct. And he was belligerent and his eyes were glazed and red. They also had probable cause to believe he was driving under the influence, I believe. Doesn't New York v. Belton foreclose any question as to the constitutionality of the search so long as the officer had probable cause to arrest him out of the vehicle? I believe it does. Well, if he's arrest, yeah. He was promptly placed under arrest. They ordered him out of the vehicle. Well, you said at the beginning. If we conclude that they had probable cause to arrest him, then Belton clearly validates the search of the interior of the vehicle. So we have to determine if they had probable cause for arrest, I mean, for trespassing or reckless driving. Now, the marijuana issue, I believe, was not addressed at length in below, although there was testimony. It is clear, I believe, when you read the record, that the police also had probable cause to arrest him for driving under the influence. Now, that's stretching the record, counsel. Yeah. I mean, the fact that he – I mean, isn't – am I not correct? Doesn't Alaska law permit use of marijuana in possession of small quantities? Alaska law forbids driving a vehicle under the influence. No, no, no, no. That's not my question, Ms. Farrington. It's not illegal in Alaska to smoke marijuana. It is illegal to drive a vehicle under the influence. But as Judge Hollinson just questioned you, the fact that you've been smoking marijuana or you had a drink before the officer got you out of the car doesn't mean you're driving under the influence without a little more evidence than what was developed in this record, correct? No. I disagree, Your Honor. I believe there was quite a bit of evidence that he was driving under the influence. He – he reaped the marijuana. His eyes were bloodshot. He was belligerent. He was driving recklessly. You put those facts together, and I – and I believe that under Alaska law that there was probable cause to believe that he was driving under the influence of the drug. Counsel, let me ask you this. The definition of reckless driving is that the driver created a substantial and unjustifiable risk of harm of such a nature and degree that conscious disregard of it or failure to perceive it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. Would you agree? That's correct, Your Honor. And so that's what we're talking about in terms of probable cause for reckless driving. For reckless driving. And what in the record supports this? He was speeding well above the speed limit through a student parking lot. What did the record say in terms of how fast he was going? It said he was going at least 10 miles over the speed limit, which in the – in the student parking lot was 15 miles an hour. He was cutting in and out of traffic. He was passing on the right. He was pulling out into oncoming traffic in an attempt to bypass the line of student vehicles leaving the parking lot. There were students streaming in and out. As the officers testified, there were crowds of students standing around. I believe he was creating a very substantial risk of harm. The district court, was the argument made regarding probable cause to arrest a reckless driver? The district court argument was focused on the arrest for trespassing because at the time, in the Ninth Circuit, the law was that the probable cause had to relate closely to the offense that the officers mentioned to the individual at the time he was arrested. And that, the Supreme Court has since made clear, is not the law. My time is up. Does anybody have anything further? Thank you, Your Honor. McCoy, we'll give you the last word. Kind of you and I will be brief. I want to address the reckless driving issue first. And just a point. Talk about the 28J letter in the Devenbeck case. Did you challenge the probable cause as to reckless driving? It was not even discussed in the district court. In other words, it wasn't. But the officers do testify to those factors. To conclusory facts, he was driving recklessly. The facts were, that were testified to, that the speed limit was 15 miles an hour, and they perceived that he was driving 10 miles or 25 miles an hour, and he was slowing, that he passed two cars on the right. And then when the officers finally stopped him, they thought he might be trying to pass on the left. But if you take a look at tab C, you're going to see a parking lot that funnels into one road out to the top of the picture. And I submit that that's what's happening. When you look at Devenbeck, there was a plethora of information that the officer in Devenbeck, if I hope I'm pronouncing it right, his interest in that motorist was because he thought he was imitating or impersonating a police officer, and that was his focus. And then when he made the charge, he made the charge based on the tape. The entire focus on this case was the trespass. And quite frankly, the reckless driving argument is an after-the-fact argument trying to justify what we think is a questionable trespass arrest. I mean, if the officers testified that that was one of the grounds on which they arrested him, how does that make it after-the-fact? The fact that you all focused on the trespass doesn't preclude us from looking at the record to see what they testified. Not at all. Not at all. And it's just like the marijuana. Well, he smelled like marijuana, but how can you look at that record and conclude that he was driving under the influence? Well, Ms. Farrington has just identified a half a dozen factors that are – that I think are relevant to a determination as to whether he was driving under the influence. You know, but you go – you go to this high school parking lot and – I mean, first of all, Mr. Dorsey's entitled – I mean, Mr. Dorsey hasn't conceded this, all right? He hasn't conceded the reckless driving. He hasn't been given an opportunity to litigate it. It wasn't litigated. If you take a look, and I put in the brief the pleadings that the – whoever has the writing responsibility is going to have the entire file. You're not going to see a reference to reckless driving anywhere. Other than in the testimony of the officers as to why they arrested him. That's right. I mean, right in the magistrate's report. And in the end. But he doesn't even reference the statute. And Judge Rawlinson correctly read what's required. It's a substantial and unjustifiable risk of harm of such a nature and degree that conscious disregard of it is a gross deviation from the standard of conduct you would expect of reasonable people. Well, if we press the testimony of the officers, doesn't that establish probable  I mean, if he's, you know, racing through the parking lot, 10 miles over the posted speed limit, weaving in and out of cars when there are students who are coming out of the high school. I don't think the record supports the allegation that he's weaving in and out. He does pass on the right. Passing on the left. I guess you can characterize it any way you want. I characterize it differently than you do. The question is, what did the officer think, and was it reasonable to suspect he was engaged in reckless driving? It sounds pretty close to me. Look at the diagram, not the diagram, but the aerial photograph, and you'll see that conceivably, you know, a passing on the right is very easy as students are going to get to this one exit, which is at the top. The last thing is I disagree with counsel's representation that the written notification with regard to trespass was adopted after that. That's been in effect for a long time. It was in effect before this. I think that whether it's important to you or not, I want to point out a disagreement I have with counsel about that. And other than that, thank you for your courtesy.
judges: Canby, Tallman, Rawlinson